P. A. RUSSELL *v.* SOUTH ARKANSAS OIL COMPANY

5-4084                                        410 S. W. 2d 865

Opinion delivered January 23, 1967
[Rehearing denied February 27, 1967.]

*Gaughan & Laney,* for appellant.

*Spencer & Spencer* and *Don Gillaspie,* for appellee.

LYLE BROWN, Justice. This litigation stems from the cancellation of a ten-year lease held by South Arkansas Oil Company on a filling station site. The lease would not normally expire until August 24, 1967. In May 1965 South Arkansas Oil Company filed suit alleging breach of the lease by the defendant, P. A. Russell, and seeking damages. Russell averred that the Oil Company had in fact breached the lease and prayed for damages. The Chancellor declared that the lease was voided by the ac-

tions of the lessor, Russell, as of August 1, 1964. Damages were denied either party, and P. A. Russell appeals. The principal issue is the determination of which party breached the lease and the date of the breach.

Russell owned the filling station site and improvements thereon in Camden, and in August 1957 executed a ten-year lease to W. R. McHaney. Appellee, South Arkansas Oil Company, shortly took over the lease by assignment from McHaney. The lease rental to Russell was based on gallonage sales, but with a minimum payment of $1,200.00 annually, payable $100.00 monthly. The station was equipped with tanks, pumps, signs, etc., belonging to the Oil Company and stocked with its products. The venture was apparently never profitable. Several operators conducted the business over the years, but the rentals to Russell never exceeded the minimum of $100.00 monthly.

In 1962 the Oil Company and Russell entered into an oral agreement under which Russell became the station operator. The operating agreement was admittedly vague but apparently the Oil Company was to continue to honor lease payments and pay the utilities, whereas Russell would market their products. This arrangement began on a temporary basis, the principal purpose being to keep the station open until the Oil Company could find a suitable operator.

According to the executive officer of the Oil Company, Russell's operation was not profitable to the company. Wadsworth, the Oil Company executive, testified that in 1963 he sent two different individuals to Russell to take over the operation and Russell refused to give possession; that in April 1964 he wrote Russell to either pay the utilities or close the station; that a similar written demand was made in June; that in July 1964 Wadsworth went to the station and personally demanded possession and it was refused; that a few days later he wrote Russell to "... deliver the keys to such station to us as soon as possible and vacate the premises. In

the event you are still in the station on August 1, 1964 ... then we will consider that you are voluntarily voiding our lease with you."

This demand brought no response and, according to Wadsworth, he made the last lease payment of $100.00 to cover July rent. He directed that utility bills no longer be billed to the Oil Company. In December 1964 a Mr. Pate was operating the station and marketing a competitor's product. Pate had bought Russell's stock.

The only further contact of appellee Oil Company with this station (according to its executive officer) was in regard to its equipment. He allegedly contacted the jobber whose products were there merchandised concerning rent for the Oil Company's equipment. No agreement was reached. This was in December 1964. Then in January 1965 the Oil Company removed its equipment.

It would serve no useful purpose to recount the testimony of Russell. Suffice it to say that he disagreed with the Oil Company's witness concerning Russell's refusal to give possession. In view of Wadsworth's testimony we cannot say the findings of the Chancellor that Russell breached the lease are against the preponderance of the evidence.

The only other witness offered to sustain Russell's contention that he did not breach the lease was James Anderson, a liquor store operator at Cullendale. His testimony tends to support Russell's theory that the Oil Company was exercising control over the property *after* August 1, 1964. Anderson testified that in late August or early September he contacted Russell about renting the station; that he made an oral agreement with Wadsworth to rent it and paid him $100.00; that he posted $100.00 good faith money with Russell to assure the latter he would buy his stock when he took over; that within a matter of weeks he gave up the idea and did not seek to reclaim the two payments.

The action of Wadsworth with respect to accepting the payment from Anderson is difficult to reconcile with his contention that the lease terminated the previous August. However, his company still had substantial equipment on the premises; they were anxious to see an operator installed who would market their products instead of those of a competitor; and Wadsworth said he explained to Anderson that the Oil Company no longer held a lease. Furthermore, it must be remembered that Russell refused the payment. The Chancellor concluded that this transaction was not an act of dominion or control over the premises by Wadsworth, and we are unable to say his finding on this point was against the preponderance of the evidence.

Russell's claim for damages alleged to have been committed by the Oil Company in removing the underground tanks, pumps, etc., was likewise rejected by the Chancellor. Here again the testimony was conflicting.

This is one of those cases of conflicting testimony and circumstances. Absent the findings of the Chancellor, it would be most difficult to decide on the cold record. But, as so ably stated by Justice McFaddin in the case of *Orrell* v. *E. Barton & Co.*, 240 Ark. 211, 398 S. W. 2d 685 (1966):

> "The Trial Court had the opportunity to observe the witnesses' demeanor, appearance, mannerisms, candor or lack of candor, and consequently was in a much better position than is this Court, which sees only the typewritten page, to judge the credibility of the witnesses and the weight to be given the testimony of each."

The decree of the Chancery Court is affirmed.

BYRD, J. dissents.

CONLEY BYRD, Justice, dissenting. The parties agree that after August, 1964, Mr. Anderson wanted to obtain

a lease upon the service station involved and that he contacted Mr. Wadsworth, an officer of appellee and paid him $100 for a month-to-month lease on the premises. The testimony of Mr. Wadsworth is that he accepted the $100 and tendered same to Mr. Russell, the appellant, less certain utility expenses which Mr. Wadsworth had earlier claimed he was entitled to withhold at the time he had the utilities cut off. The facts also show that Mr. Wadsworth did not attempt to remove the equipment until after he was informed of the provision in the lease that the equipment automatically belonged to appellant if appellee abandoned the lease, and then not until he saw his competitor's gasoline being sold through his tanks by Mr. Pate.

In view of the fact that Mr. Wadsworth wrote appellant on April 13, 1964, that the service station lease was an unprofitable venture from which he would like to be released, I cannot regard his conduct in accepting the rental check from Mr. Anderson as anything but an act of dominion over the premises at that time. Mr. Wadsworth's explanation that he intended to lease only his equipment to Mr. Anderson does not comport with his conduct in accepting $100 rent and forwarding same to appellant. Furthermore, Mr. Anderson testified positively that he rented the premises from Mr. Wadsworth.

Therefore, I dissent from the affirmance of the trial court's finding that appellant terminated the lease on August 1, 1964.